CAMILLO ROSSI, Appellant, *v.* ANTOINETTE ROMANZO and SAMUEL ROMANZO, Respondents, Impleaded with ALEXANDER LARNER and Others, Defendants.

Third Department, April 27, 1938.

*Laverne Orvis*, for the appellant.

*Eugene J. Steiner* [*Lester R. Rubin* of counsel], for the respondents.

RHODES, J. The action is brought to foreclose a mortgage on real property given to secure the payment of $4,400. The defense is usury.

The verdict, order and judgment found that the plaintiff did take a rate of interest upon the alleged loan in excess of six per cent and that such taking was in pursuance of a corrupt agreement. The order and judgment direct a surrender of the bond and mortgage and that it be canceled of record.

For convenience the only parties who will be referred to as defendants are Antoinette Romanzo, the owner and mortgagor, and Samuel Romanzo, her husband, who are related to plaintiff, all residing in Albany.

Defendants desired to purchase a lot adjoining their residence, and money was loaned by the plaintiff to purchase the property and build a house thereon, plaintiff claiming that defendants importuned him to make the loan, and defendants insisting that plaintiff solicited the loan.

It is not disputed that $1,000 was first advanced and later by weekly installments $3,000 additional was loaned, to enable defendants to pay for materials and labor in the construction work as it progressed. The defendants say that this $4,000 was the entire amount loaned; that after receiving the first $1,000 plaintiff refused to make further advances unless he should receive a bonus of ten per cent and interest at the rate of ten per cent and that the bond and mortgage were made for $4,400 pursuant to such usurious agreement. This the plaintiff denies. He says that intermediate the loan of $1,000 and the $3,000 he advanced additional installments amounting to $935; that he was unwilling to have the property stand as security for the full amount; that he agreed to advance it if necessary, but upon condition that $535 should be repaid within ten days, from the earnings of the trucking business carried on by defendants; that for this reason the bond and mortgage in question were made for $4,400 but that the defendants never repaid the $535.

None of the parties kept a record of the amounts loaned or repaid and no receipts were given, but each side testified positively as to the total amounts involved, and there is clear and positive testimony asserting and denying the alleged usurious agreement.

There were subsequent dealings between the parties whereby plaintiff loaned additional moneys to defendants to build a garage on the premises, taking therefor a second mortgage for $3,136. Four or five items of repayments were made to plaintiff but the parties disagree as to such amounts and as to the indebtedness upon which they were to be applied, the plaintiff asserting that all repayments made were to apply on the notes evidencing the loans which were subsequent to the mortgage being foreclosed. It was stipulated at the trial that no part of the principal of this bond and mortgage has been paid.

The plaintiff, defendants and most of the witnesses were Italians, whose testimony was taken by the aid of an interpreter. The testimony is vague and confusing as to the details of the financial transactions between the parties. The record indicates clearly the difficulty which the court and the jury must have had in

endeavoring to arrive at the true facts, particularly in view of the great mass of testimony introduced as to the extraneous, irrelevant and immaterial matters, which only served to confuse the issues, and much was improper and harmful as against plaintiff, though in some instances received without objection.

Certain testimony for the defendants, prejudicial in its nature, was received in evidence over objection which, in view of the unsatisfactory state of the record, cannot be disregarded.

It was testified that three or four years after the date of the alleged usurious agreement plaintiff called on defendants urging payment, and during the interview stated that he had $10,000 of insurance on the property and suggested that defendants burn the building, to his and their financial advantage.

There was also testimony to the effect that at about the time of the conversation about burning the building, defendants were seeking a " Home Owners' Loan," and requested plaintiff to sign an agreement subrogating his second mortgage to that of the proposed loan; that he stated he was foreclosing his mortgage and would not sign such subrogation agreement unless he was paid $250 for the cost of the foreclosure, which defendants asserted had not been commenced; that plaintiff also suggested that if he foreclosed, defendants would not have to pay the other creditors — would be free from paying them.

These extraneous matters had no proper evidentiary bearing upon the issues here involved, and the sole purpose and effect of their introduction necessarily must have been to prejudice the jury against the plaintiff and create the impression that he was not only a usurer and an extortionist, but willing to be a party to the commission of the crime of arson.

No one can say that this testimony was not the decisive factor influencing the verdict, in the face of the sharply conflicting testimony and the confused state of the record.

If the present judgment is permitted to stand, the defendants are absolved from the payment of the principal which they concede they borrowed and have not repaid, amounting at least to $4,000, and which, if plaintiff's story is correct, amounts to $4,935. The plaintiff should not thus be penalized in the absence of clear and convincing proof of usury.

The judgment should be reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.

HILL, P. J., McNAMEE, CRAPSER and BLISS, JJ., concur.

Judgment and order reversed, on the law and facts, and new trial granted, with costs to the appellant to abide the event.